UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HERB REED ENTERPRISES, LLC

                Plaintiff,

    v.                                              CASE NO.: 26-CV-11553

GOOD TIME DISTRIBUTION, LLC, GOOD
TIME ENTERTAINMENT, LLC, AND PAUL
STEELE
                Defendants

**COMPLAINT FOR DAMAGES AND FOR
PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

Plaintiff Herb Reed Enterprises, LLC ("HRE") alleges and asserts the following claims

against Defendants Good Time Distribution, LLC, Good Time Entertainment, LLC, and Paul

Steele.

**NATURE OF THE CASE**

This is an action for trademark infringement, unfair competition, and trademark dilution

under federal statutes, with pendent state and/or common law claims for trademark infringement

and unfair business practices. Herb Reed Enterprises, LLC seeks preliminary and permanent

injunctive relief to prevent Defendants Good Time Distribution, LLC, Good Time Entertainment,

LLC, and Paul Steele, their agents and promoters, or anyone or entity they manage or control, from

any further unauthorized use of the mark and goodwill of THE PLATTERS, or some variation

thereof, and also seek damages, attorneys' fees and costs.

**JURISDICTION AND VENUE**

1.      This Court has original subject matter jurisdiction over this action pursuant to 28

U.S.C. § 1331 and 28 U.S.C. § 1338 and has supplemental jurisdiction pursuant to 28 U.S.C.

§ 1367 over the remaining claims, because this action arises under the trademark laws of the United

States, Title 15, United States Code, and because the remaining counts have a common nucleus of operative facts with the counts arising under trademark.

2. This Court has personal jurisdiction over Defendants as they have engaged in the transaction of business and committed acts complained of herein in interstate commerce and in this judicial District.

3. Venue is proper in this District under 28 U.S.C § 1391 and 28 U.S.C. § 1400(a) because: (a) a substantial part of the events or omissions giving rise to the claims occurred in this District; (b) a substantial part of the property that is the subject of this action is situated in this District; or (c) the Defendants are subject to personal jurisdiction in this District.

## PARTIES

4. Herb Reed Enterprises, LLC ("HRE") is a Massachusetts Limited Liability Company with a principal place of business in Peabody, Massachusetts.

5. Good Time Distribution, LLC is a Tennessee limited liability company with a principal place of business of 111B Rains Ave., Nashville, Tennessee, 37203.

6. Good Time Entertainment, LLC is a Tennessee limited liability company with a principal place of business of 111B Rains Ave., Nashville, Tennessee, 37203, and is managed by Paul Steele.

7. Paul Steele is an individual who resides, on information and belief, at 3816 Trimble Road, Nashville, Tennessee, 37215.

## ALLEGATIONS COMMON TO ALL COUNTS

### Formation and Early Success of the Vocal Group The Platters

8. Herbert Reed ("Reed") founded and named the vocal group called "The Platters."

9.      The Platters has never had a static membership. At its inception, it was composed of Reed, Joe Jefferson, Alex Hodge, and Cornell Gunther, but it was not a commercial success.

10.      In 1954, Jefferson and Gunther ceased performing with Reed and were replaced by David Lynch and Tony Williams.

11.      In or around 1954, Zola Taylor joined the group, and Paul Robi replaced Hodge. Those five singers—Reed, Robi, Lynch, Williams, and Taylor are sometimes referred to as the "Original Platters" or the "Classic Lineup."

12.      The Platters' Classic Lineup enjoyed great success, charting several number one hits during the 1950s, including "The Great Pretender" (1955), "My Prayer" (1956), "Twilight Time" (1958), and "Smoke Gets In Your Eyes" (1958).

13.      Between 1959 and 1969, the group's composition continued to change, with various members of the Classic Lineup replaced by other performers.

14.      As a result of running afoul of Jim Crow laws, in 1959, the group left the United States and toured internationally. The Platters' relocation enabled them to become the first African American vocal group to become global superstars.

15.      In 1959, when the group left the United States, Tony Williams stopped appearing on stage with The Platters and was replaced by vocalist Sonny Turner.

16.      When the group eventually returned to the U.S., Turner would record lead vocals on several tracks on the Musicor Label.

17.      The lineup continued to change as Taylor and Robi left and were replaced by other performers. By the end of 1969, Herb Reed was the sole remaining vocalist from the group he had created, and the only one who had performed on all of The Platters' recordings.

3

18.     The Platters made a measured resurgence with moderate hits such as "Love You 1000 Times" (1966) and "With This Ring" (1967) during the "Beach Music" years.

19.     Through their recordings and original performances, Reed and the other members of the group made "The Platters" famous both nationally and internationally, and a group of major importance to the music industry. They were inducted into the Rock & Roll Hall of Fame in 1990, the Vocal Group Hall of Fame in 1998, and the Grammy Hall of Fame in 1999 and 2002.

**Continuation of the Group By Herb Reed and HRE**

20.     In 1970, Turner left to pursue a solo career. Reed continued to manage, perform, tour, and exploit sound and audiovisual recordings as "The Platters" or "Herb Reed and The Platters" until he died in 2012.

21.     As the group's composition changed, a confusing number of groups calling themselves The Platters competed for business, as various former members and others formed their own versions of the group.

22.     Litigation over rights to use the name The Platters persisted for decades in state and federal courts with inconsistent results.

23.     In 2006, Reed created the HRE to manage his entertainment affairs. Reed consolidated his rights to THE PLATTERS mark and his other music-related rights into HRE and managed the vocal group The Platters through his company.

24.     Beginning in 2010, Reed and HRE engaged in a series of lawsuits, which further clarified, along with prior cases, that Reed's rights in THE PLATTERS mark were superior to all others.

25.     HRE owns the mark THE PLATTERS, registered on the principal register of the United States Patent and Trademark Office under Registration Number 5,001,469, in IC 41 (live

performances by a musical group) and IC 9 (audio and video recordings featuring music and artistic performances). A true and accurate copy of its certificate of registration is attached as Exhibit A.

26.    The Platters is an existing artist that, through HRE, continues to perform, tour, record, and exploit sound and audiovisual recordings as they have done continuously since their founding.

27.    HRE promotes The Platters' services through various channels, including social media (e.g., Facebook: https://www.facebook.com/ThePlattersOfficial/) and the official website www.theplatters.com.

28.    The Platters have a worldwide audience for live performances and recordings.

**Upcoming Release of Platters Recording and Interference of Infringing Recordings**

29.    Bandcamp.com is an online record store.

30.    The Platters have recorded a new album, scheduled for release through digital and physical distribution channels. In preparation for the upcoming series release and eventual LP, HRE arranged for digital distribution through various online channels, including Bandcamp.

31.    When HRE tried to create an artist page for The Platters on Bandcamp, it discovered that another entity claiming to be The Platters had already created a page:



32.     The Defendants' Platters' Bandcamp page is interactive, allowing consumers to purchase recordings.

33.     The page offers for sale an album released in 2022, claiming it is a collection of recordings by The Platters made at the Rock and Roll Palace.

34.     The recording is derived from a 1986 live performance by Paul Robi and his group.

35.     Robi, however, did not have the right to use the mark The Platters after he left the group. *See Robi v. Reed*, 173 F.3d 736, 740 (9th Cir. 1999).

36.     The unauthorized "Platters" page included a photograph of another imposter group led by Monroe Powell, who has been permanently enjoined from using THE PLATTERS mark without HRE's permission, unless explicitly identifying themselves as a "Tribute to The Platters" or a "Salute to The Platters." *See Herb Reed Enters. v. Monroe Powell's Platters, LLC*, 25 F. Supp. 3d 1316, 1330 (D. Nev. 2014).

6

37.    The unauthorized page also represents to consumers that they can contact The Platters through a link, even though the link does not connect to HRE or The Platters.

38.    The improper use of THE PLATTERS mark to sell recordings, and the presence of the unauthorized and imposter "Platters" page, interfered with HRE's ability to create a legitimate page for the sale of The Platters' new recordings.

39.    Defendants' actions have caused confusion among digital distributors and online stores about the identity of The Platters.

40.    Defendants' actions also cause confusion among consumers by promoting counterfeit recordings as associated with, or endorsed by, The Platters.

**<u>Identification of the Infringers</u>**

41.    On March 17, 2026, HRE notified Bandcamp of the unauthorized "Platters" page.

42.    Bandcamp responded to HRE, indicating that the page appeared to be administered by Good Time Inc. and provided the following link: https://goodtimerecords.bandcamp.com/.

43.    The link indicates that the company administering the page is "Good Time Inc., located in Nashville, Tennessee. It promotes recordings under the "Good Time Records" label:





44.    There is no address or phone number listed on Good Time Inc.'s Bandcamp page.

45.    The Good Time Records website asserts it owns the rights to various recordings, including those of "Little Darlin's Rock 'n' Roll Palace."

46.    The Good Time Records website does not list an address or phone number for contact.

47.    Paul Steele is the founder of Good Time Inc. and has extensive experience in the music industry.

48.    On information and belief, Good Time's business involved artist management, and the acquisition and exploitation of catalogs of vintage audio copyrights, sound recordings, and published compositions.

49.    On information and belief, Good Time Inc. sold its artist management business to another artist management business, Triple 8 Management (Triple 8"). As part of the sale, Triple 8 also hired Steele.

50.    On information and belief, Steele continues to own an interest in Good Time Inc. and is one of the owners of Good Time Records.

8

51.  The Tennessee Secretary of State does not have records of a company called "Good Time Inc." There are, however, three companies with similar names, all of which list Paul Steele as their manager: Good Time Records, LLC, Good Time Entertainment, LLC, and Good Time Distribution, LLC.

52.  Good Time Records, LLC was administratively dissolved in 2021. Good Time Entertainment, LLC, and Good Time Distribution, LLC are active.

53.  Good Time Entertainment LLC and Good Time Distribution, LLC are related companies under common ownership and management of Paul Steele. On information and belief, they, along with Steele, act jointly and in concert to promote, distribute, and sell the infringing recordings at issue in this action.

**Defendants' Contacts with Massachusetts**

54.  On March 20, 2026, a Massachusetts resident purchased a "Platters" recording from Good Time through its Bandcamp page.

55.  After purchase, the Massachusetts resident downloaded the recording directly from the Bandcamp site.

**Defendants' Ongoing Infringement**

56.  Following the discovery of the unauthorized recording on Bandcamp, HRE sent a Digital Millennium Copyright Act ("DMCA") takedown notice on March 20, 2026.

57.  In response, Bandcamp removed the Defendants' Bandcamp page on or about March 26, 2026.

58.  Defendants, however, have not contacted HRE in response to the DMCA notice it sent to Bandcamp or the removal of its related "Platters" page.

59.     Defendants continue to infringe on Plaintiffs' mark THE PLATTERS through other online music sites, including, but not limited to, Spotify and iTunes.

60.     HRE has not authorized Defendants to sell recordings or to use the THE PLATTERS mark in connection with recordings or otherwise.

61.     Defendants are not affiliated with The Platters or the Plaintiff, and never acquired any rights to THE PLATTERS mark through first use in commerce or otherwise.

**<u>COUNT I</u>**
**(Federal and Common Law Trademark Infringement)**

62.     The Plaintiff incorporates the allegations in the foregoing paragraphs 1 through 61 herein as if fully repeated.

63.     Plaintiff owns rights throughout the United States and internationally in and to the mark THE PLATTERS in connection with vocal and musical performances and recordings.

64.     Plaintiff owns rights in the federally registered mark THE PLATTERS.

65.     HRE and its predecessor in interest, Herbert Reed, continuously used THE PLATTERS mark in interstate commerce since at least 1953, and its rights to the mark are superior to any rights Defendants may claim in that mark or to any equivalent or phonetically similar mark.

66.     Plaintiff's rights are protected under 15 U.S.C. § 1125(a) and common law.

67.     Defendants' unauthorized use of THE PLATTERS mark is likely to cause confusion, mistake, or deception among consumers and constitutes trademark infringement in violation of Plaintiff's rights at common law and in violation of 15 U.S.C. § 1125(a).

68.     Defendants' conduct is knowing, intentional, and willful.

69.     These wrongful acts have proximately caused and will continue to cause irreparable injury to Plaintiff, including dilution of goodwill, confusion to the public, injury to HRE's reputation, and diminution in the value of THE PLATTERS mark. These actions have caused and

10

will continue to cause imminent irreparable harm and injury to the Plaintiff for which there is no adequate remedy at law.

70.    Plaintiff is entitled to injunctive relief pursuant to 15 U.S.C. § 1116 restraining Defendants, and all persons or entities acting with or through them, from engaging in further unlawful conduct pursuant to 15 U.S.C. § 1125.

## COUNT II
### (Unfair Competition in Violation of 15 U.S.C. § 1125)

71.    The Plaintiff incorporates the allegations in the foregoing paragraphs 1 through 61 herein as if fully repeated.

72.    By committing the acts herein alleged, including Defendants' wrongful use of the mark THE PLATTERS, Defendants are guilty of unfair competition, deceptive advertising, and unfair trade practices, in violation of 15 U.S.C. § 1125(a), causing Plaintiff damages and loss of profits. Plaintiff is entitled to damages, including multiple damages and costs, for those wrongful and intentional acts.

## COUNT III
### (False Designation of Origin and False Representations)

73.    The Plaintiff incorporates the allegations in the foregoing paragraphs 1 through 61 herein as if fully repeated.

74.    Defendants' actions constitute false designation of origin and false representations that are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Plaintiff's services and those of the Defendants. Plaintiff has no control over the nature or quality of Defendants' services. Any failure by Defendants to provide quality services will reflect adversely on Plaintiff as the believed services of origin thereof and will hamper efforts by Plaintiff to protect its goodwill and reputation.

11

75.    Pursuant to 15 U.S.C. §§ 1116, 1117, and 1125, Plaintiff is entitled to injunctive relief, damages, lost profits, attorneys' fees, and other remedies as provided therein.

## COUNT IV
### (Dilution)

76.    The Plaintiff incorporates the allegations in the foregoing paragraphs 1 through 61 herein as if fully repeated.

77.    Plaintiff owns and enjoys rights throughout the United States in and to the registered mark THE PLATTERS.

78.    The mark THE PLATTERS is famous and distinctive.

79.    Defendants began using THE PLATTERS mark in commerce after it became famous and distinctive, and such use is likely to dilute Plaintiff's mark.

80.    Defendants acted willfully and with the intent to dilute and harm the distinctiveness of THE PLATTERS mark.

81.    Pursuant to 15 U.S.C. §§ 1116, 1117, and 1125, Plaintiff is entitled to injunctive relief, damages, lost profits, attorneys' fees, and other remedies as provided therein.

## COUNT V
### (False Advertising, Lanham Act, § 43(A) (15 U.S.C. §1125(a))

82.    The Plaintiff incorporates the allegations in the foregoing paragraphs 1 through 61 herein as if fully repeated.

83.    Defendants have, in connection with their services, used one or more false descriptions of fact and/or false misrepresentations of fact, which, in commercial advertising or promotion, misrepresent the nature, characteristics, and/or qualities of their services.

84.    To influence consumers to purchase their services, Defendants have falsely advertised and promoted on their websites and through social media that their records are those of "The Platters" and that consumers can contact The Platters via their Bandcamp page.

85.    Defendants' representations regarding their false affiliation with "The Platters" constitute commercial speech in that they are designed to promote Defendants' business interests through the identification of the alleged affiliation with THE PLATTERS mark, and the suggestion that they are The Platters and a continuation of that group or that they represent the group.

86.    At no time has Plaintiff or The Platters been affiliated with the Defendants, endorsed their services, or agreed to allow Defendants to benefit commercially and competitively from Plaintiff's goodwill and reputation. Therefore, Defendants' advertisements and promotions are literally false and misleading.

87.    Because Defendants' advertisements and promotions are literally false and misleading, the unauthorized statements of affiliation and other false statements have deceived and/or have the capacity to deceive a consumer or consumers who see or hear the false statements and misrepresentations.

88.    On information and belief, advertising includes false metadata that mischaracterizes facts about The Platters, which are used in connection with online searches for The Platters and for the promotion of Defendant's services.

89.    Defendants' false statements and representations misrepresent an inherent quality and/or characteristic of their services, and therefore their deception is material and likely to influence the purchasing decisions of consumers who purchase Defendants' recordings, and it also influences consumers' decisions regarding Plaintiff's services.

90.     Defendants' false statements and misrepresentations have been and are made in interstate commerce, including at various locations on the internet and on Defendants' web page, which consumers can access in this District and throughout the United States.

91.     Defendants' improper activities, as described herein, have been willful and deliberate, thereby making this an exceptional case under the Lanham Act.

92.     Plaintiff has been and/or is likely to be injured as a result of Defendants' false advertisements and promotions, including harm to Plaintiff's ability to compete in the marketplace, and erosion and damage to Plaintiff's goodwill and reputation.

## COUNT VI
### (Trademark Counterfeiting, 15 U.S.C. §§ 1114, 1116(d), 1117(b)-(c))

93.     The Plaintiff incorporates the allegations in the foregoing paragraphs 1 through 61 herein as if fully repeated.

94.     Plaintiff is the owner of United States Trademark Registration No. 5,001,469 for the mark THE PLATTERS on the Principal Register of the United States Patent and Trademark Office. The mark is valid, subsisting, and incontestable.

95.     Defendants have used, and continue to use, in commerce, a reproduction, counterfeit, copy, or colorable imitation of THE PLATTERS mark in connection with the sale, offering for sale, distribution, and advertising of audio recordings. Defendants' use of the mark on or in connection with these recordings constitutes use of a counterfeit mark within the meaning of 15 U.S.C. § 1116(d) and 15 U.S.C. § 1127, in that it is a spurious mark identical with, or substantially indistinguishable from, Plaintiff's registered mark.

96.     The recordings sold and distributed by Defendants were not manufactured, authorized, licensed, or approved by Plaintiff. Defendants knew or should have known that HRE did not authorize the recordings and that the performing group had been adjudicated to have no

rights in THE PLATTERS mark. Defendants' use of the counterfeit mark was therefore intentional and willful within the meaning of 15 U.S.C. § 1117(b).

97.     Defendants' counterfeiting activities have caused and are likely to cause confusion, mistake, and deception among consumers as to the source, origin, sponsorship, and authenticity of the recordings sold under the THE PLATTERS mark, and have caused and will continue to cause irreparable harm to Plaintiff for which there is no adequate remedy at law.

98.     By reason of Defendants' willful trademark counterfeiting, Plaintiff is entitled to: (a) seizure and destruction of all counterfeit goods and materials bearing the infringing mark pursuant to 15 U.S.C. § 1116(d); (b) treble damages or, at Plaintiff's election, statutory damages of not less than $1,000 nor more than $200,000 per counterfeit mark per type of goods sold, or if the Court finds the use was willful, up to $2,000,000 per counterfeit mark per type of goods sold, pursuant to 15 U.S.C. § 1117(b)-(c); and (c) attorneys' fees and costs pursuant to 15 U.S.C. § 1117(b).

## COUNT VII
### (Unfair and Deceptive Acts and Practices, M.G.L. c. 93A, § 11)

99.     The Plaintiff incorporates the allegations in the foregoing paragraphs 1 through 61 herein as if fully repeated.

100.     Plaintiff and Defendants are each engaged in trade or commerce within the meaning of M.G.L. c. 93A, § 11. Both parties engage in business conduct in Massachusetts, including through Defendants' interactive online storefront, through which Massachusetts residents have purchased recordings bearing the infringing THE PLATTERS mark.

101.     Defendants' conduct, including the unauthorized use of the registered trademark THE PLATTERS, the false designation of origin of their recordings, and the deliberate misrepresentation to consumers that their recordings are those of, or are endorsed by, The Platters,

15

constitutes unfair and deceptive acts and practices in the conduct of trade or commerce in violation of M.G.L. c. 93A, § 11.

102.    Defendants' unfair and deceptive conduct was knowing and willful, entitling Plaintiff to up to three times actual damages and mandatory attorneys' fees and costs pursuant to M.G.L. c. 93A, § 11.

103.    As a proximate result of Defendants' violations of M.G.L. c. 93A, Plaintiff has suffered actual damages, including lost business, erosion of goodwill, and reputational harm. Plaintiff is entitled to actual damages, multiple damages, injunctive relief, attorneys' fees, and costs pursuant to M.G.L. c. 93A, § 11.

## PRAYER FOR RELIEF

WHEREFORE, Herb Reed Enterprises, LLC, prays for judgment against Defendants as follows:

A.    Preliminarily and permanently enjoin Defendants from use of the mark THE PLATTERS and any equivalent or phonetically similar names or marks in connection with any vocal group or recording, and in connection with any advertisements, promotional, marketing, or other material without Plaintiff's express written permission;

B.    Preliminarily, and permanently enjoin Defendants from representing that they have any rights to THE PLATTERS mark;

C.    Preliminarily, and permanently enjoin Defendants from unfair competition under the Lanham Act and award Plaintiff damages for unfair competition;

D.    Award Plaintiff actual damages and loss of profits, trebled for Defendants' knowing unauthorized use of the trademark and use of a counterfeit trademark in connection with their services;

16

E.       Award Plaintiff statutory damages pursuant to 15 U.S.C. § 1117(b)-(c), including, at Plaintiff's election, statutory damages of up to $2,000,000 per counterfeit mark per type of goods for willful counterfeiting;

F.       Order the seizure and destruction of all counterfeit goods, labels, packaging, and promotional materials bearing the counterfeit THE PLATTERS mark pursuant to 15 U.S.C. § 1116(d);

G.       Order an accounting of all income and expenses associated with the Defendants' use of THE PLATTERS mark;

H.       Award Plaintiff enhanced and exemplary damages;

I.       Award Plaintiff costs and attorneys' fees;

J.       Award Plaintiff up to three times actual damages, together with mandatory attorneys' fees and costs, pursuant to M.G.L. c. 93A, § 11, for Defendants' knowing and willful unfair and deceptive acts and practices; and

K.       Order such other and further relief as may be just under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues triable by a jury.

Respectfully submitted,

SOMMERS LAW, PLLC

Dated: 04/02/2026

By: /s/ Eric M. Sommers
Eric M. Sommers (BBO #649611)
58 N. State Street
Concord, NH 03301
Eric@sommerslaw.com
(603) 570-4854

*Attorneys for Herb Reed Enterprises, LLC*

17